NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the
 internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-4983-16T4

IN RE B&C TOWING, INC., 527
AVENUE P, NEWARK, NEW JERSEY,
07105 – PROTEST HEARING FOR
DENIAL OF PRE-QUALIFICATION
APPLICATION FOR ROUTINE
TOWING SERVICES FOR ZONE
15E ON THE NEW JERSEY
TURNPIKE.
_____________________________

 Argued November 29, 2018 – Decided May 6, 2019

 Before Judges O'Connor and DeAlmeida.

 On appeal from the New Jersey Turnpike Authority.

 Gabriel H. Halpern argued the cause for appellant
 B&C Towing, Inc. (Pinilis Halpern LLP, attorneys,
 Gabriel H. Halpern, of counsel and on the briefs).

 Christopher R. Paldino argued the cause for
 respondent New Jersey Turnpike Authority (Chiesa
 Shahinian & Giantomasi PC, attorneys; John F. Casey,
 on the brief).

PER CURIAM
 B&C Towing, Inc. (B&C) appeals from a final agency decision of the New

Jersey Turnpike Authority (Authority) denying its request to be prequalified to

bid on contracts for towing services on the New Jersey Turnpike (Turnpike) and

Garden State Parkway (Parkway). We reverse and remand for further

proceedings.

 The Authority is a State agency responsible for the operation of the

Turnpike and Parkway. The Authority uses a two-step process to award towing

contracts to those who wish to tow vehicles from the Turnpike and Parkway.

Before they may bid, prospective towers must be prequalified by the Authority

by demonstrating they have the reliability, experience, equipment, and storage

facilities the Authority requires. N.J.A.C. 19:9-2.13(d). After the

prequalification process is complete, the Authority issues a request for bids to

the prequalified towers. After the bid submission deadline passes, the Authority,

which awards multiple contracts for the Turnpike and Parkway, issues contracts

to the lowest bidders. N.J.A.C. 19:9-2.13(b).

 In this matter, the Authority issued specifications for those towers who

sought to be prequalified. We were not provided with a copy of the

specifications, but it is not disputed that one of them stated as follows:

 Contractor shall offer general passenger vehicle repair
 service ("general repairs") at the garage facility. This

 A-4983-16T4
 2
 includes, but is not limited to, towing to other locations
 and repair work. Garage facilities shall have adequate
 tools, bay space and inventory or parts to perform
 general repairs on an assortment of passenger vehicles
 ....

 [(Emphasis added).]

 B&C submitted an application for prequalification to the Authority. As

part of the prequalification process, Authority personnel made an unannounced

site visit to B&C's facility to determine whether it met the Authority's

specifications. As a result of that inspection, the Authority rejected B&C 's

application for prequalification on the grounds it lacked sufficient lighting,

fencing, and security at its facility. B&C promptly filed a protest, see N.J.A.C.

19:9-2.12(b), and a hearing was held. During the hearing, B&C presented

evidence that it met the Authority's specifications for lighting, fencing and

security at its site.

 Although the hearing was limited to these three issues, B&C's

representative testified as follows in response to two of the Authority's counsel's

questions:

 Counsel: Okay, if you can kind of take me from cradle
 to grave, a customer shows up at the door, they want to
 pick up a car that's been towed there, for whatever
 reason, and you do repairs at the facility as well,
 correct?

 A-4983-16T4
 3
 Witness: We do not.

 Counsel: You do not, okay.

 Witness: Self repairs, not to the public. We only do
 our self maintenance and stuff like that, we do not do
 repairs for the public.

 The hearing officer issued a written decision finding B&C did in fact have

the requisite lighting, fencing, and security; however, because of the above

testimony, the hearing officer upheld the rejection of B&C's prequalification

application on the ground that, although B&C maintained a repair shop, it

repaired only its own and not its patrons' vehicles. The hearing officer stated it

is mandatory towers have the ability to repair vehicles because

 [t]he precise reason that a patron is being towed is often
 the result of a minor repair issue . . . . In specifying
 such requirements in its prequalification package, the
 Authority has made an affirmative decision that it is
 both inconvenient, and an unwarranted additional cost,
 for patrons to necessarily have a car towed to a second
 location after a routine tow, only to have such minor
 repairs performed.

 The hearing officer also commented the Authority could not waive the

requirement a tower have the capacity to provide certain minor repairs. Pursuant

to N.J.A.C. 19:9-2.12(d), the hearing officer's written decision became a final

agency decision. On appeal, B&C contends the Authority erred when it rejected

B&C's pre-application on the ground B&C does not provide repairs to the

 A-4983-16T4
 4
owners of the vehicles it towed. B&C argues that because its pre-application

was not rejected by the Authority on the latter ground, B&C could not have

reasonably anticipated such issue would arise during the hearing and, thus, it

was not prepared to address this issue. B&C does not contest that at the time of

the hearing it was providing repairs to only its own vehicles. What it does

contend is that it can provide repairs to its patrons and could have provided

evidence of its capacity to do so had it been provided with notice the hearing

officer was going to hear and decide such issue.

 Generally, our review of a final administrative determination is limited.

In re Carter, 191 N.J. 474, 482 (2007). An agency determination will not be

vacated "in the absence of a showing that it was arbitrary, capricious or

unreasonable, or that it lacked fair support in the evidence[.]" Ibid. (quoting

Campbell v. Dep't of Civil Serv., 39 N.J. 556, 562 (1963)).

 However, it is essential a contracting authority afford "a fair opportunity,

consistent with the desideratum of a fair and expeditious conclusion of the

procurement process, for the protesting bidder to present the facts and law

supporting the protest." Nachtigall v. N.J. Tpk. Auth., 302 N.J. Super. 123, 143

(App. Div. 1997). Certainly, "an agency is never free to act on undisclosed

 A-4983-16T4
 5
evidence that parties have had no opportunity to rebut." High Horizons Dev.

Co. v. State, 120 N.J. 40, 53 (1990).

 During the hearing, B&C had a fair opportunity to and did introduce

evidence about the quality of the lighting, fencing, and security at its facility.

B&C knew those issues were going to be addressed and was prepared to

introduce evidence about them. However, there was no indication before the

hearing the Authority was dissatisfied with B&C's ability to repair the vehicles

of its patrons. B&C was unaware this issue was going to be addressed and was

unprepared to meet it.

 In our view, the fact B&C was not providing such service to patrons at the

time of the hearing was not fatal to its pre-application. The subject specification

did not state a contractor had to be providing such service when it submitted its

prequalification application; the specification stated a contractor "shall offer"

general passenger vehicle repair services at the contractor's garage facility. The

issue was whether B&C was ready and able to provide that service at the time

the pre-application was submitted. The evidence adduced during the hearing

did not resolve that question.

 Therefore, because B&C was not on notice that the issue of its ability to

repair patrons' vehicles was going to be addressed and considered by the hearing

 A-4983-16T4
 6
officer, we reverse the final decision and remand for a new hearing so that B&C's

ability to provide repairs to its patrons can be properly addressed and decided.

 Reversed and remanded for further proceedings consistent with this

opinion. We do not retain jurisdiction.

 A-4983-16T4
 7